IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NAHOM MICHAEL TESFAYE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:17-cv-160 (LMB/MSN) |
| ) | |
| JOHN WALRATH, Warden, River North ) | |
| Correctional Center, ) | |
| ) | |
| Respondent. | |

MEMORANDUM OPINION

Before the Court is respondent's Motion to Dismiss [Dkt. No. 8] petitioner Nahom Tesfaye's ("petitioner" or "Tesfaye") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 [Dkt. No. 1]. For the reasons explained below, the Motion to Dismiss will be granted.

I. BACKGROUND

On December 19, 2012, Tesfaye was arrested pursuant to a warrant alleging that he had committed one count of rape, in violation of Virginia Code § 18.2-61. Opinion Letter 2, Tesfaye v. Clarke,[1] No. CL-2015-616 (Fairfax Cty. Cir. Ct. Jan. 14, 2016) [R.305]. Tesfaye waived his right to a preliminary hearing and, in August 2013, he was indicted on that charge by a Fairfax County Grand Jury. Id. On September 19, 2013, Tesfaye, who was represented by Thaddeus

---

[1] The respondent named in Tesfaye's state habeas petition was Harold W. Clarke, the Director of the Virginia Department of Corrections. In his current federal habeas petition, Tesfaye has named John Walrath, the former Warden of the River North Correctional Center, as the respondent. Although neither party has advised the Court that a substitution is necessary, it appears that Walrath is no longer the Warden of the River North Correctional Center and Tesfaye is no longer housed at River North; however, because Walrath has been named in his official capacity, petitioner has in essence sued the Commonwealth of Virginia itself. See Hafer v. Melo, 502 U.S. 21, 25 (1991). Because the essential respondent would not change even if the Warden of Tesfaye's current facility were substituted for Walrath, the Court will evaluate the habeas petition and respondent's Motion to Dismiss on the merits.

Furlong ("Furlong"), pleaded guilty to the charge in a hearing before Judge Charles Maxfield of the Fairfax County Circuit Court. Id.

During the plea hearing, the Assistant Commonwealth Attorney offered the following proffer of facts:

> On November 17th of 2012, at a private home on Devereux Court in the Alexandria part of Fairfax County, E.S. who was nineteen at the time was home from college and at a friend's house playing cards and drinking. She was there with six male and female friends including this Defendant, Nahom Tesfaye.
>
> After talking and playing cards with her friends and consuming five shots of tequila, E.S. was intoxicated and does not remember being put to bed. At about 3:40 in the morning, E.S. was forced awake due to physical pressure atop her body. When she woke up, she saw the Defendant on top of her with his penis inside of her vagina.
>
> Once E.S. realized what was going on she said, "Whoa," and the Defendant got off of her, sat on the edge of the bed and pulled up his pants. The Defendant then walked out of the room like nothing had happened.

Id. at 2-3 [R.305-06] (quoting Plea Hr'g Tr. 8-9). After the Commonwealth's proffer, Furlong was asked whether he had anything he wished to add to the Commonwealth's description of the facts. Furlong responded:

> I would just add that he did have a conversation with her. She wasn't in unconsciousness. If this had gone to trial we would enter that testimony and that he asked if he could have sex, she responded, "Yes." But as the Commonwealth said,[2] we believe that she was responding thinking he was someone else, thinking that he was the Jesse person, which made it non-consensual under the Code.

Id. at 3 [R.306] (quoting Plea Hr'g Tr. 10-11). Judge Maxfield accepted Tesfaye's guilty plea and, on December 18, 2013, sentenced him to 20 years in prison with 10 years suspended, conditioned on probation for life. Id.

---

[2] In a portion of the Commonwealth's proffer not quoted by the circuit court, the Commonwealth explained that when Tesfaye was interviewed by detectives, he "said that when he entered the room, E.S. called the Defendant 'Jesse.'" Plea Hr'g Tr. 10. Jesse was the host of the party and E.S.'s ex-boyfriend.

2

On January 15, 2015, Tesfaye filed a Petition for a Writ of Habeas Corpus in Fairfax County Circuit Court that raised five claims:

> i. Trial counsel provided ineffective assistance by failing to research, investigate or litigate defenses to rape by fraud, and by advising him to plead guilty to conduct that is not prohibited by Virginia law;
>
> ii. The court violated [his] Due Process right by convicting [him] based on a guilty plea that did not provide proof of guilt beyond a reasonable doubt;
>
> iii. The Commonwealth violated [his] Due Process by failing to provide exculpatory evidence supporting a defense based on fraud in the inducement;
>
> iv. Trial counsel provided ineffective assistance [by] failing to advise him of the Sexually Violent Predator commitment program; and
>
> v. Trial counsel provided ineffective assistance by arranging for a police-conducted polygraph examination, failing to discuss the law regarding polygraphs with [him], failing to attend the polygraph examination, failing to request a second examination, and failing to challenge the results of the polygraph and interrogation in court.

Id. at 3-4 [R.306-306A]. On August 19, 2015, the circuit court[3] held an evidentiary hearing on Claim One, in which the parties presented the testimony of several witnesses, including Tesfaye, Furlong, and Assistant Commonwealth Attorney James Panagis ("Panagis"), as well as exhibits and the criminal file. Id. at 4 [R.306A]. The circuit court found that the "evidentiary record revealed numerous inconsistent narratives" from Tesfaye. Id. On November 17, 2012, the day of the rape, Tesfaye and E.S. exchanged text messages, in which Tesfaye repeatedly denied any sexual contact. Id. at 4-5 [R.306A-307]. The next day, Tesfaye's narrative appeared to shift. When E.S. asked him why he was lying, Tesfaye responded: "I just confessed to Jesse[.] . . . I was being stupid and drunk. I went to ceck [sic] on you for good intentions at first and I just went idiotic from there[.]" Id. at 5 [R.307] (alterations in original) (quoting Evidentiary Hearing Resp't Ex. 2). In addition, the same day, Tesfaye texted Jesse:

---

[3] Although Judge Maxfield had accepted Tesfaye's plea and sentenced him, Judge Daniel Ortiz conducted the evidentiary hearing and denied the habeas petition.

3

> Ok Jesse. Youre right I didn't know what I was doing. Being drunk isn't an excuse. You win I lied I was wrong. I apologize. I wasnt man enough to live up to my actions. I don't want the law to come into hand. I already have a possession charge which I have to go to court Already for. I have a scholarship opportunity to go to penn state on the line. Another trial would ruin that for me[.]

Id. (alteration in original) (quoting Evidentiary Hearing Resp't Ex. 2). Ten days later, on November 28, 2012, Tesfaye again messaged E.S. Id. He wrote: "I just want to apologize once again for what I did and lying about doing it. Please don't press charges though. I beg." Id. (quoting Evidentiary Hearing Resp't Ex. 2).

At some point after these text message exchanges, Tesfaye was interviewed by Fairfax County detectives.[4] [R.126-189]. At first, Tesfaye told the interviewer that he and E.S. had kissed but that they had not engaged in sex, [R.140-149]; however, later in the interview, apparently after taking a polygraph examination and being confronted with failing results, Def. Mem. 9,[5] Tesfaye admitted to having sex with E.S.: "We did have sex and the thing is, that I think she thought I was Jessie at first. But when I first walked into that room, I told her, 'No, it's me. It was Nahom.'" Opinion Letter 6, Tesfaye, No. CL-2015-6166 [R.308] (quoting Evidentiary Hearing Resp't Ex. 1 54:936-37). When asked to elaborate on the circumstances, Tesfaye explained:

> [W]hen they took [E.S.] upstairs, I was downstairs and when they all came downstairs, I went outside on the phone and talked to one of my friends that goes to school in Pennsylvania. It was cold outside so I went back inside but I couldn't hear because they were still yelling downstairs. So, I went upstairs to the bathroom. Talked on the phone about 30 minutes. Then, I heard the grunting and the moaning from [E.S.]. The door was open, it wasn't closed, so I went in there to ask her if she was okay. Then, she was, like, mumbling, but like responsive in her way.

---

[4] The opinion of the Fairfax County Circuit Court does not identify the date on which this interview occurred.
[5] There does not appear to be any dispute that Tesfaye took a polygraph examination and failed it during this interview, but it is not clear from the excerpts of the interview in the record at what point in the interview the polygraph was administered or when the results were explained to him.

4

> [Detective:] Okay, not really responsive in full sentences? Just like a word here, a word there.
>
> [Tesfaye:] Yeah, like, ugh, she mumbles out and explains that she was mad that Jessie had turned gay on her. But, I left. I left my keys in that room. And I went back into the room. And that's when she said, "Jessie." . . . And I said, "No, it's Nahom." Then, I grabbed my keys and she was looking at my direction and I took a signal wrong.

Id. (third and sixth alterations in original) (quoting Evidentiary Hearing Resp't Ex. 1 69:1036-48). Throughout the interview, Tesfaye repeatedly told law enforcement that E.S. had called him "Jesse" but that he had corrected her. Id. at 6-7 [R.308-09].

The circuit court found that after Tesfaye admitted to law enforcement that he had had sexual contact with E.S., he sent an email to Furlong reiterating the same narrative he had told to the detectives. Id. at 7 [R.309]. At the evidentiary hearing, Furlong testified that this email surprised him, because up until that point, Tesfaye had told Furlong that he and E.S. had not had sex. Id. Furlong also testified that Tesfaye's admission to detectives changed his analysis of the best defense strategy. Id. In particular, Furlong testified that he discussed with Tesfaye the difference between going to trial and having a jury impose the sentence and pleading guilty and having the judge impose the sentence as well as the impact that Tesfaye's changing narrative might have on a jury's evaluation of the appropriate punishment. Id. at 8 [R.310].[6] Finally, Panagis testified at the hearing that "in a case like this, when there's evidence like we had," his policy is to refuse to make a plea bargain offer that involves pleading to a lesser charge because there "really aren't lesser included felonies for a rape of this nature." Id. (quoting Evidentiary Hearing Tr. 144:15-:18).

---

[6] Consistent with this apparent shift in focus from the chances of acquittal to the potential differences in punishment that Tesfaye might receive from the judge and a jury as well as with his proffer at the plea hearing, Furlong also testified that, at the time, he was not aware of a possible defense to the rape charge resting on the idea that "any consent . . . is valid consent." Evidentiary Hearing Tr. 12:2-13:1.

5

On January 14, 2016, the circuit court issued an Opinion Letter, in which it denied Tesfaye's habeas petition. The court explained that to show that his counsel was constitutionally ineffective, Tesfaye had to meet the "two-pronged test enunciated by Strickland v. Washington, 466 U.S. 668 (1984)." Id. at 9 [R.311]. First, there must be a showing that counsel's "acts or omissions were outside the wide range of professionally competent assistance" when viewed in light of "prevailing professional norms" and when professional judgments are given appropriate deference. Id. (quoting Strickland, 466 U.S. at 690). If a petitioner can show that his counsel's performance was deficient, he must then demonstrate that he was prejudiced by those errors. Id. In the context of a petitioner who pleaded guilty, prejudice requires a showing that "there is a reasonable probability" that, "but for counsel's errors," the petitioner "would not have pleaded guilty and would have insisted on going to trial." Id. at 10 [R.312] (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Under this prong, the petitioner's asserted "subjective preferences" are "not dispositive"; instead, the question is whether "proceeding to trial would have been objectively reasonable in light of all of the facts." Id. (quoting United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)). Specifically, the circuit court observed, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. (quoting Hill, 474 U.S. at 59). On the substantive question whether "fraud in the inducement" vitiates consent under Virginia law, the court observed that the Supreme Court of Virginia "has not decided the issue" but that the Fairfax County Circuit Court—as well as courts in the majority of other states to have considered the issue—had previously held that "no rape occurs where a person impersonates another in order to obtain the victim's consent to sexual intercourse." Id. (internal quotation marks omitted).

6

The circuit court then moved to address Tesfaye's five claims. With respect to the first claim, that his counsel "provided ineffective assistance by failing to research, investigate or litigate defenses to rape by fraud, and by advising him to plead guilty to conduct that is not prohibited by Virginia law," the court held that Tesfaye's counsel was deficient under the first prong of <u>Strickland</u> but that Tesfaye could not show prejudice sufficient to satisfy the second prong of <u>Strickland</u>. <u>Id.</u> at 11 [R.313]. According to the court, Furlong "testified that he was unaware of the affirmative defense of fraud in the inducement" and, as such, he "did not have a complete understanding of the law surrounding the potential defenses available to his client." Given this finding, the court concluded that Furlong provided inadequate representation; however, the court was "unconvinced" by Tesfaye's "claim that a decision to plead not guilty and proceed to trial would have been rational under the circumstances" for "two principal reasons." <u>Id.</u> First, the court found that "the defense of 'consent by fraud' was not available" because Tesfaye stated "on numerous occasions" that he had told E.S. that he was not Jesse. <u>Id.</u> Accordingly, the court concluded that Tesfaye "neither misrepresented his identity nor engaged in concealment or impersonation to fraudulently induce E.S. to consent to sex" and therefore "consent by fraud in the inducement was not an affirmative defense available" to him. <u>Id.</u> Second, the court found that "the text message confessions" that Tesfaye sent to E.S. and Jesse would have "so greatly diminished, if not destroyed, his credibility with a jury that any affirmative defense based upon a different narrative would have been unlikely to succeed at trial." <u>Id.</u> Indeed, the court found Tesfaye's credibility to be "questionable throughout these criminal proceedings" and specifically found him "to be incredible during his testimony at the evidentiary hearing." <u>Id.</u> In addition, the court observed that going to trial would likely have

7

increased Tesfaye's "sentencing exposure by depriving him of any benefit of the Virginia Sentencing Guidelines." Id.

As to Tesfaye's second claim, that the "court violated [his] Due Process right by convicting [him] based on a guilty plea that did not provide proof of guilt beyond a reasonable doubt," the court found that Tesfaye's "voluntary entry of a guilty plea constituted the waiver of his right to appeal non-jurisdictional defects" and observed that Tesfaye cannot use a habeas petition "to circumvent the appellate process." Id. at 12 [R.314]. Therefore, the court held that Tesfaye's claim was procedurally defaulted. Id. In the alternative, the court found that "the Commonwealth provided sufficient evidence at the entry of the plea to establish [Tesfaye's] guilt." Id.

The court rejected Tesfaye's third claim, that "the Commonwealth violated [his] Due Process by failing to provide exculpatory evidence supporting a defense based on fraud in the inducement," because, "[a]fter reviewing the record thoroughly," the court was unable to find any support for his allegation "that the Commonwealth failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963)."

The court also rejected Tesfaye's fourth claim, that his "counsel provided ineffective assistance [by] failing to advise him of the Sexually Violent Predator commitment program." According to Tesfaye, the Supreme Court's decision in Padilla v. Kentucky, 599 U.S. 356, 368-69 (2010), which held that a defendant's lawyer was deficient when the lawyer provided Padilla "false assurance that his conviction would not result in his removal from the country" even though the relevant statute was "succinct, clear, and explicit" in explaining that his conviction would subject him to presumptively mandatory removal, "imposed an affirmative duty upon" Furlong to "advise [Tesfaye] of the possibility of civil commitment as a Sexually Violent

8

Predator ('SVP')," Opinion Letter 12, Tesfaye, No. CL-2015-616 [R.314]. The court held that Padilla was distinguishable because, in Padilla, the defendant's "deportation would be practically inevitable after he pleaded guilty" but "civil commitment as an SVP under Virginia law is far from certain, as classification as an SVP requires (i) a probable cause hearing, in which it must be determined that probable cause exists to label the individual an SVP; and (ii) a commitment hearing, in which the Commonwealth must prove by clear and convincing evidence that the respondent is an SVP." Id. (quoting Kim v. Dir., Va. Dep't of Corrections, 103 F. Supp. 3d 749, 757 (E.D. Va. 2015)). Therefore, the court held that Furlong did not provide deficient counsel with respect to Claim IV.

Lastly, the court rejected Tesfaye's fifth claim, that his "counsel provided ineffective assistance by arranging for a police-conducted polygraph examination, failing to discuss the law regarding polygraphs with [him], failing to attend the polygraph examination, failing to request a second examination, and failing to challenge the results of the polygraph and interrogation in court." The court observed that Tesfaye "maintained his innocence to trial counsel" and that Furlong was therefore "entitled to rely on the truthfulness of that information, along with [Tesfaye's] inconclusive private polygraph results, when he arranged the police polygraph to satisfy law enforcement" of his client's innocence. Id. at 13 [R.314A]. Accordingly, the court held that "Furlong's decision to arrange the police polygraph fell within the wide range of reasonable professional judgment." Id. In addition, the court further held that Furlong's "decision not to attend the police polygraph and subsequent interrogation of [Tesfaye] did not fall below the level of professional competence required by the Sixth Amendment." Id.

Accordingly, the court granted respondent's Motion to Dismiss and denied Tesfaye's habeas petition. Id. Tesfaye timely appealed the decision to the Supreme Court of Virginia,

9

where it was fully briefed by the parties. Resp. Mem. [Dkt. No. 9] 3. On November 8, 2016, the Supreme Court of Virginia refused the petition for appeal and, on February 3, 2017, denied Tesfaye's petition for rehearing. Id. Three days later, on February 6, 2017, Tesfaye timely filed the current Petition for a Writ of Habeas Corpus, in which he included four of the five claims that the state court had rejected.[7] On June 9, 2017, Judge Gerald Bruce Lee ordered that respondent show cause why the writ should not be granted [Dkt. No. 2] and, on July 17, 2017, respondent filed an Answer to the Petition [Dkt. No. 7] as well as a Motion to Dismiss. This civil action has since been reassigned to the undersigned judge and petitioner has filed a response to the Motion to Dismiss [Dkt. No. 13]. For the reasons that follow, the Motion to Dismiss will be granted and the Petition will be dismissed.

## II. DISCUSSION

### A. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of Tesfaye's claims is necessarily limited. The Court may not grant the petition "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This standard is "difficult to meet" and "highly deferential," and it "demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks omitted). An application of federal law is unreasonable "only if it is so

---

[7] Unlike Tesfaye's state habeas petition, the present Petition does not include a claim that the Commonwealth violated its Brady obligations.

10

erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam) (internal quotation marks omitted). Moreover, this Court must "presume the correctness of [the] state court's factual determinations unless the habeas petition rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008). Lastly, because the circuit court's decision was summarily affirmed by the Supreme Court of Virginia, the circuit court's ruling is entitled to the deference enshrined in the AEDPA. See Ylst v. Nunnemaker, 501 U.S. 797 (2001).

## B. Analysis

### 1. Claim I

Tesfaye's first claim is that his "counsel rendered constitutionally ineffective assistance of counsel when he failed to research, investigate or litigate defenses to rape by fraud, or by advising Tesfaye to plead guilty to conduct that is not prohibited by Virginia law." Pet. 16. The circuit court rejected this claim, finding that although Tesfaye's counsel was deficient, Tesfaye was not prejudiced by his errors because it would have been unreasonable for Tesfaye to proceed to trial even had he known about the possibility of a fraud in the inducement defense. In his habeas petition, Tesfaye spends significant time explaining why the circuit court's understanding of the law of fraud in the inducement was incorrect and why such a defense would have been available to Tesfaye; however, even assuming the circuit court was incorrect in stating that the defense would be unavailable, this Court finds that the circuit court's second line of reasoning— that Tesfaye's inherent incredibility would have rendered it unreasonable for him to go to trial— is not unreasonable.

The circuit court found that Tesfaye's credibility was "questionable" based on the strong evidence of multiple written and oral contradictory statements, several of which directly undercut a defense based on a fraud in the inducement, that he made up until his plea. Although Tesfaye initially maintained his innocence to trial counsel—and stated to trial counsel, to police, and to E.S. herself that he had not engaged in sex with her—he ultimately changed his story after he failed the polygraph, telling police officers that he had engaged in sex with E.S. but that it had been consensual. Moreover, the circuit court found Tesfaye's testimony at the evidentiary hearing to be inherently incredible and largely discounted it.

According to the proffer made by the Commonwealth at the plea hearing, had Tesfaye gone to trial, E.S. would have testified that Tesfaye had engaged in sex with her while she was unconscious and that he only stopped after she woke up. Tesfaye's defense would have relied on the jury believing his current narrative—that he had sex with E.S. but that she had consented, although potentially thinking that he was Jesse—rather than E.S.'s version of events. Given that Tesfaye's narrative shifted multiple times and that the circuit court found him to be incredible, that court's conclusion that it would not have been rational for Tesfaye to proceed to trial and put these competing narratives to the jury is not unreasonable. In addition, as the circuit court explained, Tesfaye received some benefit from pleading guilty because going to trial would have deprived him of the benefit of the Virginia Sentencing Guidelines. Therefore, this Court cannot find that the circuit court's conclusion that it would not have been rational for Tesfaye to give up the sentencing benefit and go to trial given his inherent incredibility was unreasonable. For these reasons, Tesfaye's first claim will be dismissed.

2. Claim II

Tesfaye's second claim is that "trial court violated Tesfaye's Due Process rights by convicting him based on a guilty plea that did not provide proof of guilt beyond a reasonable doubt." Pet. 25 (formatting altered). The state court rejected this claim, primarily on the ground that Tesfaye had procedurally defaulted the claim because his guilty plea waived his right to appeal nonjurisdictional defects and, under Virginia law, a habeas petition cannot be used as a substitute for a direct appeal. When "a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement," the "state judgment rests on independent and adequate state procedural grounds" and federal habeas relief is "bar[red]." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Petitioner has not even attempted to explain why his second claim, which the circuit court explicitly found was procedurally defaulted, should nonetheless be reviewed on the merits by this Court. Accordingly, his second claim is procedurally defaulted and will be dismissed.

3. Claim III

Tesfaye's third claim is that his "counsel rendered constitutionally ineffective assistance of counsel when he failed to advise Tesfaye of the [SVP] commitment program." Pet. 26 (formatting altered). Although the circuit court recognized that Padilla established an obligation for counsel to inform a defendant about the immigration consequences of a guilty plea, it held that Padilla did not apply to Tesfaye's situation because unlike the nearly mandatory deportation that Padilla faced, the SVP program is far from an automatic consequence of his guilty plea. Before Tesfaye could be committed as an SVP, he would be entitled to two separate hearings, with the burden of proof by clear and convincing evidence ultimately on the Commonwealth. In his Petition, Tesfaye cites two decisions—one from the Supreme Court of New Jersey and one

from the Eleventh Circuit—that he characterizes as finding that a defendant has a right to be informed about potential civil commitment under SVP programs before entering a guilty plea to a possible predicate offense. Pet. 26-27. Even assuming that Tesfaye's characterization of these decisions is correct,[8] they do not establish that the Virginia state court decision was an unreasonable application of Padilla. Instead, the circuit court clearly considered the reach of Padilla and reasonably concluded that it only extended to collateral consequences, like the deportation at issue in Padilla, that are nearly automatic results of a guilty plea—and not to consequences like SVP commitment, which is nowhere close to an automatic result of Tesfaye's conviction. Regardless of whether this Court would reach the same conclusion if evaluating Tesfaye's claim de novo, it cannot conclude that the circuit court unreasonably applied Padilla to the facts of this case. Accordingly, Tesfaye's third claim will be dismissed.

4. Claim IV

Tesfaye's fourth claim is that his "counsel rendered ineffective assistance of counsel when he arranged for a police-conducted polygraph examination, failed to discuss the law regarding polygraphs with Tesfaye, failed to attend the polygraph examination, failed to request a second examination, and failed to challenge the results of the polygraph and interrogation in court." Pet. 27 (formatting altered). The circuit court rejected this claim, finding that Tesfaye's counsel was entitled to rely on Tesfaye's assurances that he had not had sex with E.S. when arranging the polygraph and, as such, that Tesfaye's counsel had not engaged in deficient

---

[8] The Eleventh Circuit decision involved an attorney who affirmatively (and erroneously) told his client that he would not be eligible for Florida's SVP program, which the court contrasted with the mere "fail[ure] to provide any advice on civil commitment" and found to be deficient performance under Strickland. Bauder v. Dep't of Corrections State of Fla., 619 F.3d 1272, 1274 (11th Cir.) (per curiam). The New Jersey Supreme Court decision pre-dated Padilla and was based on an interpretation of state law, not the Sixth Amendment. See State v. Bellamy, 835 A.2d 1231 (N.J. 2003). Accordingly, neither decision appears to be directly on point.

14

performance with respect to the polygraph. In arguing that this conclusion constituted an unreasonable application of Strickland, petitioner cites a single case from the Eastern District of Michigan, Hannah v. Bock, 447 F. Supp. 2d 798 (E.D. Mich. 2006), which does not help his case.

In Hannah, the petitioner's lawyer had arranged for a polygraph examination but did not attend the examination. Id. at 805-06. When the petitioner was confronted with unfavorable polygraph results, he confessed to the crime. Id. at 806. In a habeas petition, he claimed that his counsel provided ineffective assistance by not attending the examination. Id. The district court observed that given "the petitioner's protestation of innocence," the "decision to recommend the test to the petitioner cannot be considered objectively unreasonable conduct"; however, the court concluded that the "failure to accompany his client to a post-arraignment police interrogation at which a polygraph test was to have been administered was not a reasonable strategic decision entitled to deference." Id. at 807-08 (internal quotation marks omitted). Despite finding deficient performance, the district court ultimately rejected petitioner's claim, finding no prejudice. Id. at 808. Because there was no suggestion that the officers had engaged in overbearing tactics or had "exploited his inferior intellect or otherwise threaten[ed] him," the court found that the "question whether the attorney's attendance would have resulted in no confession is pure speculation" and that the voluntary nature of the confession undermined any claim that counsel's error in not attending caused the confession. Id. Accordingly, the court concluded that the petitioner had not shown prejudice sufficient to satisfy the second prong of Strickland and rejected his claim. Id.

Similarly here, the circuit court found that Tesfaye's counsel was acting within the reasonable bounds of strategic decisionmaking when he arranged for the polygraph, in hopes that a positive result would be helpful for his client. When Tesfaye was confronted with the negative

15

test results, he changed his story from one involving no sexual contact to one involving consensual sex. Even assuming that petitioner is correct that counsel's failure to attend the examination constituted deficient performance, the causal link between his absence and Tesfaye's decision to change his statement is, as in Hannah, pure speculation. Similarly, any argument that a second polygraph would have confirmed the truth of Tesfaye's evolving narrative is purely speculative, because petitioner has not offered any evidence, such as the results of a privately conducted second polygraph, to suggest that he would have passed.[9]

Therefore, even assuming that Tesfaye's counsel was deficient in failing to attend the polygraph examination, Tesfaye cannot show that this deficient performance was prejudicial because he cannot establish a causal link between the absence of his attorney at the polygraph and his shifting narrative. Accordingly, Tesfaye's fourth claim will be dismissed.

### III. CONCLUSION

For the reasons stated above, respondent's Motion to Dismiss will be granted and the Petition for a Writ of Habeas Corpus will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 13th day of February, 2018.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[9] Tesfaye also claims that his counsel was deficient in failing to challenge the results of the polygraph examination in court, but there is no evidence that the polygraph was ever admitted in court and, accordingly, no opportunity or reason for Tesfaye's counsel to challenge the results. In addition, Tesfaye claims, without further elaboration, that his counsel was deficient in "failing to discuss the law regarding polygraphs with Tesfaye." Pet. 29. Tesfaye does not explain what substantive law surrounding polygraphs his counsel should have discussed, nor does he explain what the reasonable impact of such a discussion would have been on his decision to attend the polygraph or plead guilty. Accordingly, neither of these arguments can support Tesfaye's Strickland claim.

16